**LAULETTA BIRNBAUM, LLC**
GREGORY A. LOMAX, ESQUIRE
JILL A. GULDIN, ESQUIRE
WASHINGTON PROFESSIONAL CAMPUS
860 ROUTE 168, SUITE 204
TURNERSVILLE, NEW JERSEY 08012
TELEPHONE:  856-232-1600
FACSIMILE:  856-232-1601
EMAIL: glomax@lauletta.com;  jguldin@lauletta.com

**HAGNER & ZOHLMAN, LLC**
**ATTORNEYS-AT-LAW**
THOMAS J. HAGNER, ESQUIRE
57 KRESSON ROAD
CHERRY HILL, NEW JERSEY  08034
TELEPHONE:  856-663-9090
FACSIMILE:  856-663-9199
EMAIL: THagner@hzlawpartners.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY - CAMDEN VICINAGE

_____

| | |
|---|---|
| JOSEPH SAMOST, <br> 14311 Nieves Circle <br> Winter Garden, Florida 34787 <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN D. SAMOST <br> 5 Keswick Drive <br> Voorhees, New Jersey 08043 <br>  and <br><br> DEVEL, LLC <br> 479 Centennial Blvd. <br> Voorhees, New Jersey 08043 <br>  and <br><br> CENTENNIAL LAND & DEVELOPMENT <br> CORP. <br> 479 Centennial Blvd. <br> Voorhees, New Jersey 08043, <br><br> Defendants. | CIVIL ACTION <br> NO. |

_____

- 1 -

## COMPLAINT

Plaintiff Joseph Samost, ("Joseph Samost" or "Plaintiff") brings this action against Defendants Stephen D. Samost ("Stephen Samost"), Devel, LLC ("Devel"), and Centennial Land and Development Corp. ("CLDC") (collectively, "Defendants"), and alleges as follows:

### Nature of Action

1. The present case is substantially related to the resolution of the litigation in this Court before the Honorable Joseph E. Irenas, U.S.D.J. ("**Judge Irenas**") involving the Plaintiff and Defendant, Stephen Samost back in 2000 in the matter *Samost v. Samost, et al*, Civil Action No. 99-3035 (JEI) (the "**Federal Case**"). While the Court retained jurisdiction of that matter until 2007 to enforce the settlement, or resolve any disputes relating thereto, the present dispute between the parties to the settlement did not arise until after the Court's retention of jurisdiction expired pursuant to its term.

2. As described in more detail herein below, the resolution of the Federal Case involved a complex break up of family-owned assets, largely consisting of vast swaths of real estate assets, located around Southern New Jersey. Given the intrinsic nature of real estate development and the length of time between acquisition and the ultimate sell-off of subdivided lots to end purchasing homeowners, the resolution of that multifaceted business divorce carried with it the specter of future disputes arising between the parties well beyond the expiration of the Court's 2007 retention of jurisdiction.

3. This case presents a prime example of such a dispute: as described in more detail below, a New Jersey regulatory agency, the New Jersey Department of Environmental Protection ("**NJDEP**"), and an association of a subdivision homeowners (the "**Centennial Pines Club**" or the "**Pines Club**") filed suit in New Jersey state court in May, 2004 seeking to

compel the Plaintiff and the Defendants here to maintain and repair a dam, a lake, lakebed, adjacent embankment, and surrounding property on real estate assets that were transferred to the exclusive ownership and/or control of the Defendants pursuant to the 2000 settlement of the Federal Case (the "**State Court Case**")

4. As such, though the Federal Case was resolved well over a decade ago and the parties have moved on with their respective lives, the impact of that settlement are still affecting events today.

5. On March 9, 2012, the Court in the State Court Case handed down a ruling apportioning liability for the dam repairs at 45% Plaintiff, 45% Defendant, and 10% Pines Club. In so ruling, as described more fully below, the State Court did not assess responsibility as between the Plaintiff and the Defendants for any claims for indemnification and/or contribution, thus preserving such claims for subsequent litigation.

6. Accordingly, in this action, Plaintiff asserts claims for (a) declaratory relief declaring that Defendants are jointly and severally responsible to indemnify Plaintiff and hold him harmless for any responsibility for the repair and maintenance of the Centennial dam; (b) specific performance compelling Defendants to perform their obligations under the 2001 settlement of the Federal Case, including their obligation to maintain and repair the dam; (c) breach of contract resulting from the Defendants' failure or refusal to abide by the obligations under the aforesaid settlement; (d) unjust enrichment based upon Defendants' unjustified retention of Plaintiff's contribution for liabilities for which the Defendants are plainly responsible under the Federal Case settlement; (e) tortiously interfering with Plaintiff's rights under its agreement with the Centennial Pines Club; and (f) for judgment seeking equitable

subrogation against the Defendants for any liability to which the Plaintiff has been assessed liability in the State Court Case.

## Parties

7. Plaintiff is a citizen of the State of Florida, and resides at 14311 Nieves Circle, Winter Garden, Florida 34787.

8. Defendant Samost is a citizen of the State of New Jersey, and resides at 5 Keswick Drive, Voorhees, New Jersey 08043.

9. Defendant Devel is a New Jersey limited liability company with its principle place of business at 479 Centennial Blvd., Voorhees, New Jersey 08043. Its sole member is Stephen Samost, please see paragraph 9 above. Therefore, Devel is a citizen of New Jersey.

10. Defendant CLDC is a New Jersey corporation with its principle place of business at 479 Centennial Blvd., Voorhees, New Jersey 08043. Therefore, CLDC is a citizen of New Jersey.

## Jurisdiction and Venue

11. This is an action pursuant to 28 U.S.C. §2201 *et seq*. for declaration of rights and legal obligations under certain Orders of this Court entered in the matter of *Joseph Samost, et al v. Stephen Samost*, et al (Docket No. 99:3035 (JEI)) (as defined in paragraph 1 above, the "**Federal Case**"). As such, this Court has subject matter jurisdiction in the matter pursuant to 28 U.S.C. §1331.

12. Additionally, the court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because diversity of citizenship exists between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this district, and because the Defendants have consented to this Court's jurisdiction. (See paragraphs 40 and 41 below).

## FACTS COMMON TO ALL COUNTS

14.     Plaintiff refers to paragraphs 1 through 13 and incorporates them herein by reference.

### Pines Club and Centennial Lake Dam

15.     In December, 1985 CLDC entered into a certain Agreement with the Pines Club, an association of homeowners in the real estate subdivision adjacent to the Centennial Lake & Dam. In pertinent part, the Agreement provides that ownership of the Centennial Lake Dam was to be transferred to the Pines Club when 90% of the waterfront lots and 50% of the secondary lots surrounding the lake were developed (the "**Triggering Events**").

16.      Pending the transfer of title of the lake property to the Pines Club, however, CLDC retained responsibility for maintaining, managing and controlling the Centennial Lake dam.

17.     Since 1988, the NJDEP had been contacting Stephen Samost regarding the need to rehabilitate the Centennial Lake Dam. At all times relevant hereto, the NJDEP expressly acknowledged that, as owner of the dam, it was CLDC's responsibility to maintain the dam, and not the Plaintiff here, Joseph Samost.

18.     In or about early 2000, the Pines Club claimed that the 1985 Agreements were breached, and consequently asserted claims against CLDC, Stephen Samost and Plaintiff for (a) alleged costs for "treatment and maintenance" of Centennial Lake from 1989 through 2000, in

an amount in excess of $150,000 (One Hundred Fifty Thousand Dollars), and (b) for additional funds needed for repairs to the Centennial Lake Dam.

19. In November 2001, the Pines Club and Joseph Samost settled their claims for beach and lake maintenance costs. As per the settlement terms between the Centennial Pines Club and Joseph Samost and his related entities, Joseph Samost agreed to pay to the Centennial Pines Club a total of $50,000 (Fifty Thousand Dollars).

20. Just prior to the 2001 settlement between the Pines Club and Joseph Samost for beach and lake maintenance costs, Joseph Samost and Steven Samost had settled the Federal Case in July 2000. Pursuant to the settlement terms, all of the stock of CLDC was transferred to Devel, an entity wholly owned and controlled by Stephen Samost.

21. In 2003, the Triggering Events described in paragraph 16 above occurred, permitting for the transfer of right, title, interest and estate in the Centennial Lake lakebed, dam, and beach to the Pines Club. However, due to Defendants' failure to properly maintain the dam in accordance with the terms of the 1985 Agreements, the Pines Club refused to take ownership of the Centennial Lake lakebed, dam, and beach pursuant to the 1985 Agreements.

22. Notwithstanding Pines Club's refusal to transfer ownership, on July 22, 2004, Defendant Stephen Samost caused CLDC to file a Deed conveying ownership of dam, lake and beach to Pines Club.

23. As a result of a Motion filed by the Pines Club in the State Case, this Deed was subsequently rescinded in December, 2004, pending a final resolution of all claims between all parties.

**The Federal Case Litigation Between Plaintiff and Defendant, and July 2000 Settlement**

24. On or about June 29, 1999, Plaintiff and various other related parties filed the Federal Case against the Defendant, Stephen Samost, and multiple related companies relating to the ownership and control of various assets, including real estate assets valued in the tens of millions of dollars.

25. In or about July, 2000, Plaintiff and Stephen Samost entered into a settlement of the Federal Case pursuant to which Plaintiff, Joseph Samost, and other related parties transferred their interests in many real estate assets, including the real estate comprising of the Centennial Lakes subdivision, lake and lakebed, dam and surrounding property, to Defendant, Stephen Samost,, and other parties related to him.

26. Although the parties agreed to the basic framework of this settlement in July, 2000, the implementation of the settlement, and the transfers of assets contemplated thereby, took a considerable amount of time to complete.

27. In accordance therewith, on August 31, 2001, Judge Irenas issued a comprehensive Order relating to the implementation of the parties settlement, which included the following:

> On July 21, 2000, the parties settled the within action. Disputes arose as to the details of the implementation, but the parties agreed that the essential elements of a settlement had been reached.

(**Exh. "A"**, Order of the Court Dated August 31, 2001, Signed by Judge Irenas, at Pg. 3, ¶ 1)(the "**August 31st Order**").

28. In the August 31st Order, Judge Irenas issued several rulings on disputed issues which delineated the mechanics of the settlement, and consistent therewith appointed retired New Jersey Superior Court Judge L. Anthony Gibson to act as a Special Master to adjudicate any

further disputed issues relating to the settlement and its implementation. Additionally, the Court also established in the August 31st Order that the "cost of repairing and improving the Centennial Lake dam and embankments shall be borne by [Defendant] Stephen Samost." (Id. at Pg. 4, ¶ 1b).

29. The August 31st Order further required Plaintiff Joseph Samost to be responsible for reimbursement to the Pines Club for the long-standing maintenance of Centennial Lake, which obligation, as mentioned, was settled in November, 2001.

30. This Court subsequently conducted a settlement conference on January 28, 2002, at which time the parties agreed that Defendants shall assume ownership of the Centennial Lake property, the lakebed, the adjacent embankment, and the dam as part of the parties' settlement of the Federal Case (collectively, the "**Dam and Lake Property**"). As such, as of that point in time, Plaintiff no longer possessed any ownership interest in these assets, but rather had conveyed any and all interest he had therein to the Defendants.

### The 2004 State Court Case

**A. NJDEP's Claims Against Joseph Samost, Stephen Samost, CLDC, and Devel Under New Jersey's Safe Dam Act And The State Court's Apportionment of Liability.**

31. On or about May 11, 2004, the NJDEP instituted litigation in the New Jersey Superior Court, Burlington County, under the caption State of New Jersey, Department of Environmental Protection v. Centennial Land & Development Corp., et al, , Docket No. BUR-000077-04 (defined in paragraph 5 above as the "**State Court Case**"), against CLDC, the Township of Medford, the County of Burlington and Centennial Pines Club.

32. In its Complaint, NJDEP sought to compel an inspection report, operation and maintenance plan, design report, and repairs to Centennial Lake dam. Because Plaintiff did not

- 8 -

have an ownership interest in the Dam and Lake Property, Plaintiff was not originally named as a defendant in the State Court Case. Rather the only defendants originally named in the State Court Case were the defendants identified above, including Defendant Stephen Samost's controlled CLDC.

33. In its original pleading, the NJDEP in fact acknowledged that this Court approved the settlement in the Federal Case and entered an Order of Dismissal, and in connection therewith Plaintiff relinquished any ownership interest in the Dam and Lake Property to the Defendants in this case. (**Exh. "B"**, relevant excerpts of the State Court Complaint at p. 11, ¶ 35) (the "**Complaint**"). In the Complaint, NJDEP stated as follows:

> On information and belief, a settlement was reached in that matter, whereby complete ownership and control of Centennial LDC was transferred from Joseph Samost to Devel, a limited liability company controlled by Stephen Samost. The Court approved the settlement and entered an Order of Dismissal on July 25, 2000.

(Id. Complaint at p. 11, ¶ 35).

34. On or about September 2, 2005, NJDEP filed an Amended Complaint and added Steven D. Samost and Devel, LLC as defendants. (**Exh. "C"**, relevant excerpts of the "**Amended Complaint**"). In its Amended Complaint, NJDEP again acknowledged Judge Irenas' August 31, 2001 Order in the Federal Case, the Federal Court's Order of Dismissal, and the fact that complete ownership and control of CLDC was transferred from Joseph Samost to Devel, LLC. (Amended Complaint at p. 12, ¶ 39).

35. On or about August 11, 2008, the NJDEP filed a Second Amended Complaint, adding Plaintiff Joseph Samost as a defendant in that action (**Exh. "D"**, relevant excerpts of the "**Second Amended Complaint**") In it (Count One, ¶ 47 and Count Three, ¶ 54), NJDEP alleged claims pursuant to the New Jersey Safe Dam Act, N.J.S.A. 58:4-1 to -10 against the defendants, including Joseph Samost, based on the allegation that each defendant "owned" or "controlled"

- 9 -

CLDC at times during the relevant time period, and therefore each had repair and maintenance responsibilities for the dam at various times during the NJDEP's jurisdiction over the matter.

36. The NJDEP nonetheless still acknowledged in its Second Amended Complaint, Judge Irenas' August 31, 2001 Order, the Federal Case's settlement, the Federal Court's Order of Dismissal, and the fact that complete ownership and control of CLDC was transferred from Joseph Samost to Devel, LLC. (Second Amended Complaint at pp. 12-13, ¶ 39).

37. On or about March 9, 2012, the State Court entered an Order and Opinion in the State Court Case apportioning dam repair liability and costs among the defendants in that action as follows: 45% to Joseph Samost, 45% to Stephen Samost, and 10% to the Pines Club (the "**Allocation Decision**").

38. In so ordering, the State Court based its decision primarily on an interpretation of New Jersey's Safe Dam Act, N.J.S.A. 58:4-1 to -10, and the fact that each of the above defendants in that case, Joseph Samost, Stephen Samost and the Pines Club bore some responsibility to maintain and repair the dam at various times.

39. In its ruling, however, the State Court specifically carved out from its decision any resolution of whether Plaintiff, Joseph Samost, could seek indemnification and/or contribution from the above-named Defendants. In accordance therewith, the Court noted during an October 2012 oral argument that any action by Joseph Samost against the defendants named herein for indemnification and/or contribution was not before the Court and therefore would not be decided. (**Exh. "E",** relevant excerpts of the transcript of October 12, 2012 State Court hearing at 72:17-22).

40. In fact, Defendant Stephen Samost acknowledged as much when he argued before the State Court that if Plaintiff has a claim against Defendants for indemnification and/or

contribution pursuant to Federal Court's August 31, 2001, Plaintiff should bring his claim in this Court rather than before the State Court in the State Court Case so that this Court can interpret its own Orders.  (**Exh. "E"**, transcript of October 12, 2012 hearing, at 26:11-19; 27:2-12; *see also* **Exh. "F",** letter dated September 10, 2012 from Stephen D. Samost, Esquire to Honorable Karen L. Suter, P.J.Ch., at 3-4 ).

41. Similarly, Defendants CLDC and Devel also acknowledged that any claim by Joseph Samost for indemnification and/or contribution was not properly before the State Court, but rather should be asserted, if anywhere, before this Court so that the Court can interpret its own Orders. (**Exh. "G"**, letter dated September 10, 2012 from Paul Leodori, Esquire to Honorable Karen L. Suter, P.J.Ch., at 2).

### B. The Pine's Club Claim Against Joseph Samost For Post-Federal Case Settlement Maintenance And Repair Costs.

42. On or about September 26, 2007 the Pines Club filed a Third Party Complaint against Plaintiff, Joseph Samost seeking reimbursement for costs and expenses relating to the maintenance of the Pines Club beach at Centennial Lake for the time period of 2001 through 2012. Specifically, Pines Club sought a judgment in the amount of $147,402.12.

43. On October 31, 2012, the Superior Court entered judgment against Joseph Samost in the amount of $147,402.12 (the "**Pines Club Judgment**").  In the State Court's Statement of Reasons accompanying its October 2012 Order, the Court again did not address whether the Federal Court settlement required the Defendants here to indemnify Plaintiff, Joseph Samost, and expressly refused to permit Plaintiff to amend his claims in that action to assert such claims for indemnification against Stephen Samost, CLDC and Devel there because the case was too far advanced at that point.  (**"Exh. "H",** relevant excepts of the State Court's October 31, 2012)

44. On February 22, 2013, the State Court entered an Order which amended and corrected the Pines Club Judgment against Joseph Samost, *nunc pro tunc,* to $176,999.14.

## COUNT ONE
## Declaratory Judgment
**(Plaintff v. Stephen Samost, CLDC and Devel)**

45. Plaintiff refers to paragraphs 1 through 44 and incorporates them herein by reference.

46. A real controversy exists between Plaintiff and Defendants regarding Defendants' obligations for the cost of repairing and improving the Centennial Lake dam and embankments pursuant to the August 31st Order and settlement of the Federal Case.

47. Plaintiff requests that the Court grant Plaintiff declaratory relief declaring, *inter alia*, (a) enforcing the terms of the parties' Federal Case settlement and thereby compelling Defendants to indemnify and hold Plaintiff harmless for any costs associated with the repair and improvement of the Dam and Lake Property from 2001 through present; (b) that Defendants are jointly and severally responsible for satisfying the Pines Club Judgment, as amended on February 22, 2013; and that (c) Defendants are jointly and severally responsible for all of Plaintiff's litigation expenses including, but not limited to, reasonable attorney's fees incurred both in this case and in the State Court case as the result of Defendants' failure or refusal to abide by the terms of their obligations under the Federal Case settlement.

## COUNT TWO
## Specific Performance
**(Plaintiff v. Stephen Samost, CLDC and Devel)**

48. Plaintiff refers to paragraphs 1 through 47 and incorporates them herein by reference.

49. Plaintiff seeks an order enforcing the terms, conditions and provisions of Plaintiff's rights under his settlement in the Federal Case, and the terms of the Courts' August 31st Order, and thereby compelling Defendants, jointly and severally, to perform any and all repairs, maintenance or other actions as may be required by the State Court in the State Court Case relating to the Dam and Lake Property, and to indemnify and hold the Plaintiff harmless against any and all liability relating thereto including, but not limited to, indemnifying and holding the Plaintiff harmless on the aforementioned Pines Club Judgment.

50. Plaintiff has no adequate remedy at law to enforce the provisions of the August 31st Order other than to compel specific enforcement of the terms, conditions and provisions of the Order.

## COUNT THREE
### Breach of Contract
**(Plaintiff v. Stephen Samost, CLDC and Devel)**

51. Plaintiff refers to paragraphs 1 through 50 and incorporates them herein by reference.

52. Pursuant to the Federal Case settlement, Defendants accepted the exclusive ownership of the Centennial Lakes subdivision and its constituent building lots, together with the Centennial Lake, lakebed, embankment, dam and surrounding property. With that ownership, Defendants assumed all of the obligations relating thereto including, but not limited to, (a) CLDC's and Plaintiff's obligations under the 1985 Pines Club agreement; and (b) the repair and maintenance obligations for the Dam and Lake Property.

53. Pursuant to that settlement, Defendants acquired title to the Centennial Lakes subdivision and thus sold lots and property within that subdivision, and consequentially, either

directly and/or indirectly, made millions of dollars, all to the exclusion of Plaintiff, Joseph Samost.

54. The terms of this settlement therefore created contractual responsibilities between the parties which Plaintiff seeks to enforce in this litigation. By virtue of the Defendants' failure or refusal to abide by their contractual responsibilities to maintain and repair the Centennial Lake dam and surrounding properties, Plaintiff has been adjudicated partially responsible for costs, expenses and responsibilities that the Defendants plainly assumed in the Federal Case settlement.

55. By their actions and inactions described herein, Defendants have materially breached their obligations under the Federal Case settlement.

56. As a direct and proximate result of Defendants' material breaches as alleged herein, Plaintiff has been damaged in an amount to be proven at trial, but believed to exceed the amount of $176,999.14 of the Pines Club Judgment, plus any additional damages Plaintiff will suffer if Defendants' material breaches are allowed to continue.

## COUNT FOUR
### Unjust Enrichment
**(Plaintiff v. Stephen Samost, CLDC and Devel)**

57. Plaintiff refers to paragraphs 1-56 and incorporates them herein by reference.

58. By virtue of the foregoing Stephen Samost has been unjustly enriched.

59. As a direct and proximate result of Defendant's actions and inactions described herein, Plaintiff has been damaged in an amount to be proven at trial, but believe to exceed the amount of $176,999.14 of the Pines Club judgment, plus any additional damages Plaintiff will suffer if Defendants' material breaches are allowed to continue.

## COUNT FIVE
## Tortious Interference
### (Plaintiff v. Stephen Samost, CLDC and Devel)

60. Plaintiff refers to paragraphs 1 through 59 and incorporates them herein by reference.

61. Plaintiff Samost reasserts his position that he entered into Agreements contractually obligating him individually to perform Centennial lake and beach maintenance.

62. Nevertheless, the State Court litigation resulted in an Order deeming him personally obligated which resulted in the aforesaid judgment of $176,999.14 in favor of the Pines Club.

63. To the extent that a contract existed between Plaintiff herein and the Pines Club obligating the Plaintiff to perform beach and lake maintenance, based upon the actions and inactions described above, Defendant Stephen Samost tortiously interfered with those contracts and/or otherwise deprived Joseph Samost of the benefit of those contracts and/or increased Joseph Samost's financial obligations pursuant thereto.

64. Specifically, the Pines Club refused to accept and caused the rescission of a certain Deed transferring ownership of the lake and dam to the Pines Club for the specific reason that Stephen Samost and/or CLDC/Devel failed to perform the repairs to the Centennial Lake Dam deemed necessary by the NJDEP.

65. As a direct and proximate result of the Pines Club's claim that Joseph Samost's alleged obligation to perform beach and lake maintenance was extended which resulted in the aforesaid judgment of $176,999.14.

66. As a direct and proximate result of Defendants' actions and inactions described above, Plaintiff has been damaged in an amount to be proven at trial, but believed to exceed the

amount of $176,999.14 of the Pines Club judgment, plus any additional damages Plaintiff will suffer if Defendants' material breaches are allowed to continue.

**COUNT SIX**
**Equitable Subrogation**
**(Plaintiff v. Stephen Samost, CLDC and Devel)**

67. Plaintiff refers to paragraphs 1 through 66 and incorporates them herein by reference.

68. Pursuant to the Federal Case settlement in 2001, Defendants accepted the exclusive ownership of the Centennial Lake, lakebed, embankment, dam and surrounding property, thereby assuming CLDC's and Plaintiff's obligations under the 1985 Pines Club agreement and the repair and maintenance obligations for the Dam and Lake Property.

69. Notwithstanding the above, Plaintiff is being compelled to satisfy Defendants' clearly delineated obligations under the Federal Case settlement pursuant to the State Court's October 31, 2012 judgment and the subsequent amending Order of February 22, 2013, which held Plaintiff liable to the Pines Club in the amount of $176,999.14 for reimbursement of costs and maintenance expenses of the Centennial Lake property for the time period of 2001 through 2012.

70. As a result of satisfying the obligations that Defendants should have paid pursuant to the Federal Case settlement, Plaintiff is entitled to reimbursement from Defendants in the amount of $176,999.14.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff Joseph Samost prays that judgment be entered in his favor as follows:

1. On its first claim for relief, for a declaration declaring the following: (a) enforcing the terms of the parties' Federal Case settlement, and thereby compelling Defendants to

indemnify and hold Plaintiff harmless for any costs associated with the repair and improvement of the Dam and Lake Property from 2001 through present; (b) that Defendants are jointly and severally responsible for satisfying the Pines Club Judgment; and (c) that Defendants are jointly and severally responsible for all of Plaintiff's litigation expenses including, but not limited to, reasonable attorney's fees incurred both in this case and in the State Court case as the result of Defendants' failure or refusal to abide by the terms of their obligations under the Federal Case settlement.

2. On his second claim for relief, judgment against the Defendants for specific performance of the terms, conditions and provisions of the Federal Case settlement (a) compelling the Defendants to jointly and severally perform any and all repairs, maintenance or other actions as may be required by the State Court in the State Court Case, and/or any other instrumentality of government, including but not limited to the NJDEP, relating to the Dam and Lake Property, and (b) to indemnify and to hold the Plaintiff harmless against any and all liability relating thereto including, but not limited to, indemnifying and holding the Plaintiff harmless on the aforesaid Pines Club Judgment;

3. On his third claim for relief, for damages exceeding the sum of $176,999.14 assessed against the Plaintiff in the State Court Case on the Pines Club Judgment, plus any additional damages Plaintiff will suffer if Defendants continue to breach the contract;

4. On his fourth claim for relief, for damages exceeding the sum of $176,999.14 assessed against the Plaintiff in the State Court Case on the Pines Club Judgment, plus any additional damages Plaintiff will suffer if Defendants continue to breach the contract;

5. On his fifth claim for relief, for damages exceeding the sum of $176,999.14 assessed against the Plaintiff in the State Court Case on the Pines Club Judgment, plus any additional damages Plaintiff will suffer if Defendants continue to breach the contract;

6. On his sixth claim for relief, for damages exceeding the sum of $176,999.14 assessed against the Plaintiff in the State Court Case on the Pines Club Judgment, plus any additional damages Plaintiff will suffer if Defendants continue to breach the contract;

7. For reasonable attorneys' fees and costs incurred both in this matter and the related State Court Case; and

8. For such other and further relief as the Court deems just and proper.

## CERTIFICATION PURSUANT TO L.CIV.R. 11.2

Pursuant to Local Civil Rule 11.2, I, Gregory A. Lomax, the undersigned attorney of record for Plaintiff Joseph Samost, do hereby certify based on my own knowledge and based upon information available to me at my office, the matter in controversy is substantially related to the litigation between the Plaintiff and Defendant, Stephen Samost, in this Court before the Honorable Joseph E. Irenas, U.S.D.J, in the matter of <u>Samost v. Samost, et al</u>, Civil Action No. 99-3035 (JEI). The matter in controversy contains similar questions of law and fact as in the prior proceeding before this Court.


By: /s/ Gregory A. Lomax  
    Gregory A. Lomax, Esquire  
    Jill A. Guldin, Esquire  
    **Lauletta Birnbaum, LLC**  
    Washington Professional Campus  
    860 Route 168, Suite 204  
    Turnersville, NJ 08012  
    Telephone: 856.579.6040  
    Facsimile: 856.232.1601  
    Email: glomax@lauletta.com  
          jguldin@lauletta.com  

By: /s/ Thomas J. Hagner  
    Thomas J. Hagner, Esquire  
    **Hagner & Zohlman, LLC**  
    **Attorneys-At-Law**  
    57 Kresson Road  
    Cherry Hill, NJ 08034  
    Telephone: 856.663.9090  
    Facsimile: 856.663.9199  
    Email: THagner@hzlawpartners.com  

*Attorneys for Plaintiff, Joseph Samost*      *Attorneys for Plaintiff, Joseph Samost*

Dated: November 13, 2013