UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH SAMOST,<br><br>         Plaintiff,<br><br>    v.<br><br>STEPHEN SAMOST, et al.,<br><br>         Defendants. | HONORABLE ROBERT B. KUGLER<br><br>CIVIL ACTION NO. 13-6886<br><br>**OPINION** |

**APPEARANCES:**

HAGNER & ZOHLMAN, LLC
By:  Thomas Joseph Hagner, Esq.
57 Kresson Road
Cherry Hill, New Jersey 08034
         Counsel for Joseph Samost

LAULETTA BIRNBAUM, LLC
By:  Jill Ann Guldin, Esq.
591 Mantua Boulevard
Sewell, New Jersey 08080
         Counsel for Joseph Samost

HYLAND LEVIN, LLP
By:  Peter Jay Boyer, Esq.
6000 Sagemore Drive, Suite 6301
Marlton, New Jersey 08053
         Counsel for Defendants Centennial Land Development
         Corp., and DEVEL, LLC

Stephen Samost, Esq., *pro se*
479 Centennial Boulevard
Voorhees, New Jersey 08043

1

**KUGLER**, United States District Judge:

This case, which is on remand from the Court of Appeals, is the next "chapter in a decades-long, intra-family saga concerning the ownership and maintenance of Centennial Lake," *Joseph Samost v. Stephen Samost, et al.*, No. 15-1284, slip op. at 2 (3d Cir. Feb. 12, 2016), not to be confused with the other decades-long intra-family saga concerning the reconstruction and maintenance of Kennilworth Lake and dam, and Flamingo Road.   *See Joseph Samost v. Paula Luborsky[1], No.* 13-cv-7365, slip op. (D.N.J. Aug. 2, 2016).

The Third Circuit has remanded this suit to address claims the Court found Senior United States District Judge Irenas[2] failed to address in his previous decision granting summary judgment to Defendants Stephen Samost, et al.[3] on all claims, and denying Plaintiff Joseph Samost's cross-motion for summary judgment.

---

[1]   Paula Luborsky is Stephen Samost's wife / Joseph Samost's daughter-in-law.

[2]   Judge Irenas passed away in October, 2015.  Upon remand in February, 2016, the case was reassigned to the undersigned.

[3]   The Defendants are Stephen Samost and his two corporate entities, DEVEL, LLC and Centennial Land & Development Corp. ("CLDC"), both currently controlled by Stephen Samost.

Presently before this Court is Defendants' Motion for Summary Judgment.  For the reasons stated herein, the motion will be granted in its entirety.

## I.

Joseph Samost seeks the following from Defendants Stephen Samost and his companies, DEVEL and CLDC: (1) $176,999.14-- the amount of a New Jersey State Court judgment entered against Joseph Samost and in favor of the Centennial Pines Club ("the Pines Club Judgment"), which is the homeowners association encompassing the subdivided residential properties surrounding Centennial Lake; and (2) attorneys fees and litigation costs associated with this suit, as well as the state court suit that resulted in the Pines Club Judgment.[4]  He asserts various legal claims and theories in an attempt to recover these two items of relief.

Principally Joseph Samost asserts that the settlement partially embodied in an Order signed by Judge Irenas on August 29, 2001 (Docket 99-3035) makes Defendants liable for both indemnification for the Pines Club Judgment and attorneys fees.

_____

[4]  Joseph Samost previously also sought indemnification for his portion of the judgment entered in favor of NJDEP.  However, the Third Circuit affirmed that portion of Judge Irenas' decision granting summary judgment to Defendants. *Joseph Samost v. Stephen Samost, et al.*, No. 15-1284, slip op. at 5 (3d Cir. Feb. 12, 2016).

Accordingly, Joseph Samost asserts claims for breach of contract (the contract being the Federal Settlement), specific performance of the Federal Settlement, unjust enrichment, equitable subrogation, and declaratory judgment as to Stephen Samost's obligations under the Federal Settlement (Amended Complaint, Counts One through Four, and Six).

Joseph Samost also seeks to recover the amount of the Pines Club Judgment asserting that Stephen Samost tortiously interfered with a 1985 settlement Joseph Samost and CLDC reached with the Pines Club, which he asserts, directly led to the Pines Club Judgment (Amended Complaint Count 5).

The factual underpinnings of these claims are as follows.

## A.    1999 to March, 2004-- The Samost v. Samost suit in this Court

In 1999, Joseph Samost, and other relatives and corporate entities not relevant to the instant motion, filed suit in this Court against his son, Stephen Samost, and other relatives and corporate entities not relevant to the instant motion. (D.N.J. Docket 99-cv-3035; Pl's Ex. H)  The case was settled in principal in July 2001, but almost immediately after the basic settlement was reached, the parties could not agree on who would have what responsibilities concerning various parcels of real property. (Pl's Ex. G)

4

Most relevant to the instant case, the parties agreed that title to Centennial Lake and its surrounding subdivision would be transferred from Joseph Samost, who at the time owned or controlled CLDC, to one of Stephen Samost's corporate entities. This was undisputedly accomplished by transferring all of CLDC's stock to DEVEL.  But the parties could not agree "[w]hich of the parties has the responsibility for making repairs to the Centennial Dam and/or reimbursement [for repairs] to the Centennial Pines Club[.]" (Pl's Ex. G, p. 2)  Judge Irenas appointed a Special Master to resolve that issue, among others.

In an Order dated August 29, 2001, Judge Irenas adopted the Special Master's Report, specifically ordering that "[t]he reimbursement obligation to the Pines Club shall be the responsibility of Joseph Samost . . . , but . . . the cost of repairing and improving the Centennial Lake dam and embankments shall be borne by Stephen Samost." (Pl's Ex. H, ¶ 1b)

Over the course of the next year, the court's docket reflects no case activity other than two informal status conferences.

Then in 2004, Stephen Samost returned to federal court.  By this time, the New Jersey Department of Environmental Protection (NJDEP) had become involved in trying "rehabilitate the [Centennial Lake] dam to bring it into compliance with New Jersey Dam Safety standards." (*See* Pl's Exs. L, M – Letters

5

from NJDEP to Stephen Samost)  Stephen Samost wished to clarify that the federal settlement reached in 1999 did not place liability on him personally (as opposed to his companies), as NJDEP asserted. (S. Samost Decl. ¶ 11-12)

Stephen Samost applied to the Court to make certain modifications to the August 2001 Order.  The matter was referred to the Special Master, who issued a report on January 21, 2004. (Pl's Ex. P, ¶ 10)  The Court received no objections to the report, and on March 23, 2004, Judge Irenas signed an order, stating in relevant part,

> Paragraph 1b of the August 29, 2001 Order is stricken and replaced in its entirety nunc pro tunc as follows:
>
> The reimbursement to the [Centennial] Pines Club shall be the responsibility of Joseph Samost (provided nothing in this Order shall be deemed to express an opinion as to the amount or existence of such a debt) . . . the cost of repairing the Centennial Lake Dam and embankments shall be borne by [CLDC], which is owned by DEVEL LLC.  DEVEL, LLC previously certified to the Court that it would guarantee payment up to One Hundred Thousand Dollars ($100,000.00) of the obligation of [CLDC] relating to the above items . . . . . The sum of approximately Thirty Thousand Dollars ($30,000.00) remains on the Guarantee of DEVEL, LLC, which $30,000.00 is intended to cover certain costs related to the repair and/or modification to the Centennial Lake dam embankments.  DEVEL shall not be liable for any additional monies on behalf of [CLDC] and guaranteed the payment of $100,000.00 to assure the Court that the work that [CLDC] deemed to be necessary would be performed.

(Pl's Ex. P)

6

**B. May, 2004-- NJDEP files suit in state court**

On May 11, 2004, NJDEP filed suit against CLDC and the Centennial Pines Club seeking to compel compliance with New Jersey's Safe Dam Act and civil penalties. (Pl's Ex. Q)

In September, 2005, NJDEP Amended its complaint to add DEVEL, LLC, and Stephen Samost "individually and in his capacity as a director/officer and corporate official of DEVEL" as defendants. (Pl's Ex. R, ¶ 3)[5]

Sometime thereafter in 2007, Centennial Pines Club filed a Third Party Complaint against Joseph Samost. (Pl's Ex. C)  The Third Party Complaint sought indemnification from Joseph Samost in the event that "the [Centennial Pines] Club is found to be responsible for the cost and expense of repairing and maintaining the Centennial Lake dam." (Pl's Ex. C)  The asserted legal basis for such indemnification was Judge Irenas' order of August 2001. (Id.)  The Third Party Complaint specifically acknowledged that Joseph Samost had fulfilled his reimbursement obligations for the time period up to August 29, 2001; the Centennial Pines Club sought indemnification for costs and expenses incurred beyond that date.  (Id.)  The Centennial

---

[5]  NJDEP apparently did so because "[CLDC] has on numerous occasions stated that it has only between $15,000.00 and $30,000 in capital to be allocated to repair and maintenance of the dam. More importantly, [CLDC] has since informed the [NJDEP] that it may file a bankruptcy petition and seek to abandon its assets, including the dam." (Id. at ¶ 1)

Pines Club was ultimately successful, and the above-identified judgment of $176,999.14 was entered against Joseph Samost.

**C. The 1985 Settlement Agreement between CLDC and Joseph Samost on one hand, and the Centennial Pines Club on the other**

As noted above, prior to the federal settlement of Samost v. Samost, Joseph Samost controlled CLDC.  In 1985, Joseph Samost, individually, and CLDC, entered into two related agreements with the Centennial Pines Club.  Those agreements undisputedly obligated CLDC to maintain, manage and control the Centennial Lake Dam. (Pl's Exs. A, B)  They also provided that when a certain percentage of the surrounding lots were developed ("the Triggering Event"), CLDC would convey the dam to the Pines Club. (Id.)

The Triggering Event occurred in 2003, by which time Stephen Samost controlled CLDC.  Pursuant to the terms of the 1985 Agreements, CLDC filed a deed dated July 22, 2004 conveying ownership to the Centennial Pines Club. (Pl's Ex. E)  But shortly thereafter, Centennial Pines Club successfully sued to "set aside as void *ab initio*" the deed (Id.), allegedly because of "Defendants' failure to perform necessary repairs and maintenance to Centennial Lake, beach and dam." (Opposition Brief p. 30)  According to Joseph Samost, had the deed not been

8

voided, the Centennial Pines Club judgment would not have been entered against him. (Id.)

## II.

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When determining whether there is a genuine issue of material fact, the court views the facts, and draws all reasonable inferences, in favor of the nonmoving party. *Id.* at 255.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The nonmoving party must at least present probative evidence from which jury might return a verdict in his favor. *Id.* at 257. The movant is entitled to summary judgment where the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).


### III.

### A.

With regard to the claim for attorneys fees, Joseph Samost has identified no legal basis for awarding attorneys fees for this suit, or the state court litigation.  Under the American Rule, parties usually bear their own litigation costs; recovery of legal expenses by a party is only permitted pursuant to statute, court rule or express contract.  *McGuire v. Jersey City*, 125 N.J. 310 (1991).

There is no applicable statute or court rule authorizing an award of fees.  Nor is there any express contract that addresses the issue of attorneys fees at all.  There is no evidence that the parties entered into an express contract concerning attorneys fees.  Accordingly, the motion for summary judgment will be granted as to the claim for attorneys fees.


### B.

Turning to the central question presented by the instant motion, does Joseph Samost have a right "to indemnification [from the Defendants] for his liability to the Centennial Pines

10

Club?"  *See Joseph Samost v. Stephen Samost, et al.*, No. 15-
1284, slip op. at 5 (3d Cir. Feb. 12, 2016).

Joseph Samost argues that Judge Irenas' order of August
2001 answers that question affirmatively.  Defendants argue that
Judge Irenas' subsequent order of March 2004 answers that
question in the negative.  Either way, no factual discovery is
necessary, and the issue is ripe for summary judgment.  Thus,
the Court rejects Joseph Samost's argument that factual
discovery is necessary.

If Joseph Samost has a right to indemnification from
Defendants, it must arise from an agreement between himself and
Defendants.  *See generally Ramos v. Browning Ferris Industries,
Inc.,* 103 N.J. 177 (1986)(discussing the two types of
indemnification-- express indemnification pursuant to contract;
and implied indemnification arising from the parties' special
relationship).[6]  The agreement Joseph Samost points to is Judge
Irenas' Order of August, 2001, and specifically, paragraph 1b,
which states in relevant part, "the cost of repairing and
improving the Centennial Lake dam and embankments shall be borne
by Stephen Samost." (Pl's Ex. H, ¶ 1b)

---

[6]  Joseph Samost does not assert implied indemnification.  The
typical special relationships where implied indemnification can
arise (e.g., bailor-bailee, principal-agent, lessor-lessee,
*Ramos*, 103 N.J. at 189) are not present here.

11

The problem with that argument, however, is that Paragraph 1b of the August 2001 order was later "stricken and replaced in its entirety nunc pro tunc" with Paragraph f. of Judge Irenas' March 2004 Order. (Pl's Ex. P)  The operative language now reads:

> The reimbursement to the [Centennial] Pines Club shall be the responsibility of Joseph Samost (provided nothing in this Order shall be deemed to express an opinion as to the amount or existence of such a debt) . . . the cost of repairing the Centennial Lake Dam and embankments shall be borne by [CLDC], which is owned by DEVEL LLC.  DEVEL, LLC previously certified to the Court that it would guarantee payment up to One Hundred Thousand Dollars ($100,000.00) of the obligation of [CLDC] relating to the above items . . . . The sum of approximately Thirty Thousand Dollars ($30,000.00) remains on the Guarantee of DEVEL, LLC, which $30,000.00 is intended to cover certain costs related to the repair and/or modification to the Centennial Lake dam embankments.  DEVEL shall not be liable for any additional monies on behalf of [CLDC] and guaranteed the payment of $100,000.00 to assure the Court that the work that [CLDC] deemed to be necessary would be performed.

(Id.)

Thus, the question is, does paragraph f. evidence an agreement that Defendants will indemnify Joseph Samost for any future liability he may have to the Centennial Pines Club in connection with the repair or maintenance of the Centennial Lake dam?  The Court holds no.

The New Jersey Supreme Court instructs,

[t]he objective in construing a contractual indemnity provision is the same as in construing any other part

12

> of a contract — it is to determine the intent of the parties. The judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves. Thus, we should give contractual terms their plain and ordinary meaning, unless specialized language is used peculiar to a particular trade, profession, or industry. If an indemnity provision is unambiguous, then the words presumably will reflect the parties' expectations.

*Kieffer v. Best Buy*, 205 N.J. 213, 223 (2011)(internal citations and quotations omitted); *see also id.* ("If the meaning of an indemnity provision is ambiguous, the provision is strictly construed against the indemnitee.").

Here, the relevant language does not even include the word "indemnify." Joseph Samost argues that the language stating that "the cost of repairing the Centennial Lake Dam and embankments shall be borne by [CLDC]," creates an indemnity obligation, but that is not what the agreement says. The agreement says nothing about any Defendant's obligation to indemnify Joseph Samost for a judgment that would be entered against him as a result of a third party complaint that would not be filed for another three years. There was simply no indemnity agreement of any kind.

Joseph Samost argues that it is "manifestly unjust" to hold him "liable for Defendants' failure to maintain the Centennial Lake and beach for a period of eleven years during which time [he] had no ownership interest, input or control over CLDC," and

13

therefore the Court should grant him indemnification.
(Opposition Brief p. 13-14)

The flaw in this argument is that this Court is not deciding whether Joseph Samost is liable for maintaining the Centennial Lake and beach. The state court decided that issue when it entered judgment in favor of the Centennial Pines Club and against Joseph Samost.[7]

This Court cannot grant indemnification on a state court judgment just because the judgment debtor contends that the judgment is unfair. The issue before this Court is whether Defendants agreed to indemnify Joseph Samost for the Centennial Pines Judgment. It is an issue of contract interpretation, not a question of equity. The Court has held that there is no agreement to indemnify; accordingly, Defendants are entitled to summary judgment.

### C.

Joseph Samost's equitable subrogration claim also fails.

"It is important to understand that subrogation rights neither arise spontaneously nor are they free floating or open-ended. Subrogation rights are created in one of three ways: (1)

---

[7] Indeed, Joseph Samost's opposition brief states that this very issue is on appeal before the New Jersey Appellate Division. (Opposition Brief, p. 15)

by an agreement between an insurer and the insured, (2) by statute, or (3) by a judicial device of equity to compel the ultimate discharge of an obligation by one who in good conscience ought to pay it." *City of Union City v. Veals*, 247 N.J. Super. 478, 484 (App. Div. 1991) (quoting *Culver v. Insurance Co. of North America*, 115 N.J. 451, 456 (1989)).

Joseph Samost's claim implicates only the third type of subrogation. The claim fails because Joseph Samost cannot demonstrate, as a legal matter, that Stephen Samost or his companies "ought to pay" the Centennial Pines Club judgment. This argument was raised and rejected by the state court when it rendered its decision granting judgment to the Centennial Pines Club and against Joseph Samost. (Pl's Ex. T; Pl's Ex. X, p. 4-5)

Thus, Joseph Samost's equitable subrogation claim is nothing more than an attempted end-run around the state court's ruling on an issue of New Jersey statutory law-- a ruling which is currently on appeal. Joseph Samost's argument that it is unfair to impose liability on him for a period of time in which he did not own or control the dam should be (and apparently has been) presented to the New Jersey Appellate Division. This Court will not grant equitable subrogation on a state court judgment just because the judgment debtor contends that the judgment is unfair.

15

Summary judgment will be granted as to the equitable subrogation claim.

### C.

Lastly, summary judgment will also be granted on the tortious interference claim.

According to Joseph Samost, Defendants tortiously interfered with the 1985 Agreements when they failed to maintain the Centennial Lake dam, and "as a direct and proximate result" of this interference (Opposition Brief p. 30), the state court judgment was awarded against Joseph Samost.

This claim fails for two independent reasons.

First, "the elements of tortious interference with an existing contract [are]: One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise *causing the third person not to perform the contract*, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract. *Nostrame v. Santiago*, 213 N.J. 109, 122 (2013)(quoting Restatement (Second) of Torts § 766)(emphasis added).

Thus, Joseph Samost must demonstrate that Defendants induced or otherwise caused the Centennial Pines Club not to perform under the 1985 Agreements.  But this is not what Joseph

16

Samost asserts.  There is no allegation that the Centennial
Pines Club breached the 1985 Agreement.  Rather, Joseph Samost
claims that Defendants' failure to maintain the dam caused
Centennial Pines Club to seek to void the deed of conveyance
from CLDC to Centennial Pines Club-- in other words, to legally
undo CLDC's performance of CLDC's obligations under the
contract.  Such action simply is not a failure of Centennial
Pines Club to perform.  Thus, Joseph Samost has failed to state
a claim for tortious interference with the 1985 Agreements.

Second, tortious interference with contract is a tort
claim.  *See Nostrame v. Santiago*, 213 N.J. at 122.  Like a claim
for negligence, a plaintiff asserting tortious interference with
contract may only recover damages proximately caused by the
tort.  *See* Restatement (Second) of Torts § 774A ("One who is
liable to another for interference with a contract . . . is
liable for damages for (a) the pecuniary loss of the benefits of
the contract . . . ; (b) consequential losses *for which the
interference is a legal cause*; and (c) emotional distress or
actual harm to reputation, if they are reasonably to be expected
to result from the interference.")(emphasis added); *see
generally Lightning Lube v. Witco Corp.*, 4 F.3d 1153, 1170 (3d
Cir. 1993)("once it is established that a defendant in a case of
tortious interference specifically intended to harm a particular
plaintiff . . . it is appropriate for the trier of fact to

17

consider whether the resulting consequential damage to that plaintiff was a proximate result of the defendant's conduct.")(applying New Jersey law).

In this case, there is no possible factual basis for concluding that Defendants' failure to maintain the dam proximately caused the state court to enter judgment against Joseph Samost.  Therefore, as a matter of law, Joseph Samost cannot recover the amount of the Centennial Pines Club judgment from Defendants on a theory of tortious interference.

## IV.

For the reasons stated herein, Defendants' Motion for Summary Judgment will be granted in its entirety.  An appropriate order accompanies this opinion.

August 18, 2016                          s/ Robert B. Kugler
                                       **Robert B. Kugler, U.S.D.J.**